IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| HW AVIATION LLC, | ) | |
| | ) | |
| Plaintiff, | ) | No. 06 C 4445 |
| | ) | |
| v. | ) | Judge Joan Humphrey Lefkow |
| | ) | |
| ROYAL SONS, LLC, ROYAL SONS | ) | |
| MOTOR YACHT SALES, INC., and | ) | |
| FREDERIC J. GEFFON d/b/a ROYAL | ) | |
| SONS, INC., an individual, | ) | |
| | ) | |
| Defendants. | ) | |

## MEMORANDUM OPINION AND ORDER

Defendants Royal Sons, LLC ("Royal LLC"), Royal Sons Motor Yacht Sales, Inc. ("Royal Sales"), and Frederic J. Geffon doing business as Royal Sons, Inc., an individual, (collectively, "the defendants") have moved to dismiss for lack of personal jurisdiction pursuant to Federal Rule of Civil Procedure 12(b)(2) and for improper venue pursuant to 28 U.S.C. § 1391. For the reasons discussed below, the defendants' motions to dismiss for lack of personal jurisdiction are granted.[1] Plaintiff HW Aviation ("HW") has moved to strike the affidavits of Geffon and Huffer. HW's motion to strike [#31] is denied as moot.

---

[1] On August 21, 2007, HW filed an amended complaint against the defendants, which is substantially the same as the original complaint, except that it cured certain pleading deficiencies in order to demonstrate the court's subject matter jurisdiction over this case pursuant to the court's August 2, 2007 order. Likewise, the defendants submitted a motion to dismiss the plaintiff's amended complaint [#56] which is for the most part identical to the defendants' original amended motion to dismiss [#23]. Because the defendants' pending motions to dismiss are almost identical and the parties have already submitted response and reply briefs to the earlier of the two motions, the court need not consider them separately and will resolve both, referring to "the motion," in this opinion.

1

The court has jurisdiction over the subject matter based on diversity of citizenship.[2]

**BACKGROUND**

Plaintiff HW is an Illinois limited liability company with its principal place of business in the Northern District of Illinois. HW has two members, Jeffrey Wolfson and Geoffrey Hodgson, both of whom reside in Illinois. Defendant Royal LLC is a Florida limited liability corporation with its principal place of business in Clearwater, Florida. Royal LLC has two members, defendant Frederic J. Geffon and Ronna Geffon, both of whom reside in Florida. Defendant Royal Sales is a Florida corporation with its principal place of business in Clearwater, Florida. Defendant Geffon is the managing member of Royal LLC and the President of Royal Sales.

HW filed a complaint against the defendants on August 17, 2006, alleging three counts of breach of contract regarding the sale of a 1966 McDonald DC 9015 aircraft with FAA registration number N900SA ("the N900"). Upon declining to waive personal service, the defendants were served in Clearwater, Florida on September 25, 2006.

The plaintiff's complaint alleges that HW and Royal LLC entered into an agreement in which HW agreed to sell the N900 aircraft to Royal LLC. In exchange, HW was to receive

---

[2] Since *Cosgrove* v. *Bartolotta*, 150 F.3d 729, 731 (7th Cir. 1998), the citizenship of a limited liability company is determined by the citizenship of the members of the limited liability company. *See, e.g.*, *Thomas* v. *Guardsmark, LLC*, 487 F.3d 531, 533–34 (7th Cir. 2007); *Stark* v. *Abex Corp.*, 2006 WL 1472555, *1 (N.D. Ill. Apr. 3, 2006). Plaintiff HW is an Illinois limited liability company and has two members, Jeffrey Wolfson and Geoffrey Hodgson, both of whom are citizens of Illinois. Plaintiff is thus a citizen only of Illinois. Defendant Royal LLC is a Florida limited liability corporation, and has two members, defendant Frederic J. Geffon and Ronna Geffon, both of whom are citizens of Florida. Defendant Royal Sales is a Florida corporation with its principal place of business in Clearwater, Florida. The defendants are thus citizens of Florida, and the parties are therefore diverse.

2,000,000 restricted shares in Skyway Communications Holding Corp. ("Skyway") as well as 5,000,000 unrestricted shares in Skyway. If, however, the Skyway shares were not trading for at least $2 per share by April 2005, Royal LLC would give Jeffrey Wolfson, one of the owners of HW, 400 hours of flight time on the N900 aircraft, "with Wolfson only paying for fuel and crew expenses, plus catering, landing and handling fees." 1st Am. Cmpl., at 3. HW transferred ownership of N900 to Royal LLC, and in April 2005, Skyway was trading at well below $2 per share. According to the complaint, however, HW "never received any tradeable Skyway stock" nor was Wolfson ever provided the 400 hours of flight time on the N900 that was promised by the defendants. *Id.* HW claims damages for "the amount of the value of the 500 hours of flight time and the fair market value as of September 2004 of the 500,000 shares of unrestricted stock." *Id.*

On December 12, 2006, the defendants filed an amended motion to dismiss the plaintiff's complaint on the grounds that the court lacks personal jurisdiction over the defendants and that the venue is improper. The parties subsequently filed replies and responses incorporating numerous exhibits and affidavits, culminating in HW's motion to strike two of the defendants' affidavits.

## I.  MOTION TO STRIKE AFFIDAVITS

In support of their motion to dismiss, the defendants attached the affidavits of Tim Huffon and defendant Frederic Geffon. Plaintiff HW moves to strike the affidavits of Geffon and Huffon on the grounds that "neither affiant certifies that [] his statements are made on personal knowledge or that he would testify to the matters stated herein in trial." Pl.'s Mot. to

3

Strike, ¶ 6. In the defendants' reply in support of their motion to dismiss, however, the defendants submitted new affidavits from Huffon and Geffon in which each of the affiants certifies that his averments are made based on personal knowledge and that, if called to testify, he would do so consistent with the facts contained in his affidavit. The court therefore denies HW's motion to strike (Dkt. No. 31) as moot.

## II. PERSONAL JURISDICTION

When challenged under Rule 12(b)(2), the plaintiff has the burden of establishing that the court may properly exercise personal jurisdiction over the defendant. *RAR, Inc.* v. *Turner Diesel*, 107 F.3d 1272, 1275 (7th Cir. 1997) (internal quotation marks omitted). In considering whether it has personal jurisdiction, the court may review affidavits submitted by the parties. *Purdue Research Found.* v. *Sanofi-Synthelabo, S.A.*, 338 F.3d 773, 782 (7th Cir. 2003). If material facts are in dispute, the court must conduct an evidentiary hearing, and the plaintiff must prove its allegations of personal jurisdiction. *Hyatt Int'l Corp.* v. *Coco*, 302 F.3d 707, 713 (7th Cir. 2002). If, as in this case, the court makes its determination of personal jurisdiction by means of written materials alone, however, the plaintiff "need only make out a *prima facie* case of personal jurisdiction." *Purdue*, 338 F.3d at 782 (citing *Hyatt*, 302 F.3d at 713) (internal quotation marks omitted). In evaluating whether the *prima facie* standard has been met, the court resolves any dispute regarding relevant facts in favor of the plaintiff. *Id.* at 782 (citing *Nelson* v. *Park Indus.*, 717 F.2d 1120, 1123 (7th Cir. 1983)).

A federal district court sitting in diversity has personal jurisdiction "only if a court of the state in which it sits would have such jurisdiction." *Klump* v. *Duffus*, 71 F.3d 1368, 1371 (7th

Cir. 1995). Determining whether an Illinois court would have jurisdiction over the defendants in this case thus requires a two-part inquiry. *Purdue*, 338 F.3d at 779. First, the court must look to the law of Illinois. *See id.* The Illinois long-arm statute enumerates certain acts that provide for personal jurisdiction over non-resident defendants. 735 Ill. Comp. Stat. 5/2-209. Second, the court must consider whether the exercise of jurisdiction would comport with requirements of due process under the federal Constitution. *Purdue*, 338 F.3d at 779; *Edelson* v. *Ch'ien*, 352 F. Supp. 2d 861, 866 (N.D. Ill. 2005). The Seventh Circuit has determined that only one due process analysis is required, as the limits on personal jurisdiction are essentially the same under both Illinois law and the federal Constitution. *Hyatt*, 302 F.3d at 715; *see also George S. May* v. *Xcentric Ventures, LLC*, 409 F. Supp. 2d 1052, 1055 (N.D. Ill. 2006). Because the Illinois long-arm statute contains a "catch-all" provision that permits personal jurisdiction to the maximum extent allowed under the federal Constitution, 735 Ill. Comp. Stat. 5/2-209, "jurisdiction is co-extensive with federal due process requirements." *Amato* v. *Creative Confections*, No. 98 C 567, 1999 WL 184169, at *3 (N.D. Ill. Mar. 29, 1999).

The Due Process Clause of the Fourteenth Amendment limits when a state court may assert personal jurisdiction over nonresident individuals and corporations. *RAR*, 107 F.3d at 1277. The defendant must have "certain minimum contacts with [the state] such that the maintenance of the suit does not offend 'traditional notions of fair play and substantial justice.'" *Id.* (quoting *Int'l Shoe Co.* v. *Washington*, 326 U.S. 310, 316, 66 S. Ct. 154, 90 L. Ed. 95 (1945). This standard has different implications depending on whether a state is asserting "specific" or "general" jurisdiction over a defendant. *Id.* at 1277. When the suit "aris[es] out of or [is] related to the defendant's contacts with the forum, the state is exercising 'specific jurisdiction' over the

5

defendant." *Helicopteros Nacionales de Colombia, S.A.* v. *Hall*, 466 U.S. 408, 414 n.8, 61 S. Ct. 339, 85 L. Ed. 278 (1984). In contrast, when contacts with the forum are "unrelated to the subject matter of the lawsuit, general personal jurisdiction may be established if the defendant's contacts are so continuous and systematic that the defendant could reasonably foresee being haled into court in that state for any matter." *Cent. States* v. *Phencorp Reinsurance Co.*, 440 F.3d 870, 875 (7th Cir. 2006) (citing *Helicopteros Nacionales*, 466 U.S. at 414).

Unilateral activity on the part of the plaintiff is not sufficient to support a finding of minimum contacts. *Hanson* v. *Denckla*, 357 U.S. 235, 253, 78 S. Ct. 1228, 2 L. Ed. 2d 1283 (1958). "Crucial to the minimum contacts analysis is showing that the defendant should reasonably anticipate being haled into court [in the forum State] . . . because the defendant has purposefully avail[ed] itself of the privilege of conducting activities there." *Steel Warehouse* v. *Leach*, 154 F.3d 712, 714 (7th Cir. 1998) (quoting *RAR*, 107 F.3d at 1277). The "purposeful availment" requirement ensures that "a defendant will not be haled into a jurisdiction solely as a result of 'random,' 'fortuitous,' or 'attenuated' contacts." *Burger King Corp.* v. *Rudzewicz*, 471 U.S. 462, 475, 105 S. Ct. 2174, 85 L. Ed. 2d 528 (1985) (citations omitted).

If the defendant is found to have established minimum contacts with the forum state, the court then evaluates whether the exercise of jurisdiction would comport with "fair play and substantial justice." *Purdue*, 338 F.3d at 781 (quoting *International Shoe*, 326 U.S. at 320). In this analysis, the court considers several well-known factors, including "the burden on the defendant, the forum State's interest in adjudicating the dispute, the plaintiff's interest in obtaining convenient and effective relief, the interstate judicial system's interest in obtaining the most efficient resolution of controversies, and the shared interest of the several States in

furthering fundamental substantive social policies." *Burger King*, 471 U.S. at 477 (quoting *World-Wide Volkswagen Corp.* v. *Woodson*, 444 U.S. 286, 292, 100 S. Ct. 559, 62 L. Ed. 2d 490 (1980)) (internal quotation marks omitted).

HW has asserted in its pleadings that Illinois has both general and specific jurisdiction over the defendants. The court addresses each in turn.

### A. General Jurisdiction

General jurisdiction may be established if the defendants' contacts with Illinois "are so continuous and systematic that the defendant could reasonably foresee being haled into court in that state for any matter." *Phencorp*, 440 F.3d at 875. Plaintiff alleges that the defendants have had continuous and systematic contacts with Illinois because (1) defendants owned a McDonnell Douglas DC-9-15 aircraft with FAA registration number N120NE ("the N120"), which was kept at DuPage Airport Authority ("DPA") for at least a six month period; (2) defendants employed Scott Aviation, Inc., a company that does business out of DPA, to perform maintenance on the N120 while it was stationed at DPA; (3) defendants' agents lived in a hotel near DPA while maintenance was being performed on the N120; and (4) defendants or Skyway Communications Holding Corp. ("Skyway") leased and chartered the N900 out of DPA over a six month period in 2004.

The first three allegations concern the N120, an aircraft that is separate and distinct from that with which the breach of contract claims at issue in this litigation are concerned. According to aircraft title documents submitted by the plaintiff, defendant Royal Sons, Inc. is listed as a "Record Owner" of the N120. Pl.'s Response, Ex. A. The defendants note, however, that the

same title documents show that "Skyway"—a company that is not a party to this litigation—is a co-owner of the N120. *Id.* The defendants argue that they were never involved with the N120 aircraft in any capacity, that defendant Royal Sons "was only listed as an owner of the N120 Aircraft in order to assist Skyway in securing financing" for which "Skyway agreed to pay Royal Sons a fee," and that Skyway had full control and responsibility for the maintenance and expenses related to the N120. Defs.' Reply at 5. The defendants further aver that Skyway, not the defendants, employed Scott Aviation, pointing to aircraft maintenance records submitted along with the plaintiff's response.

The last allegation is the only one of the four that concerns the N900, the aircraft at issue in this lawsuit. In both its response brief and the attached affidavit of Geoffrey Hodgson, plaintiff asserts that "Skyway . . . *or* Royal Sons leased" the N900 aircraft. Pl.'s Resp. at 4 (emphasis added); *see also id.*, Ex. C, ¶ 6. HW also claims that "Skyway *or* Royal Sons chartered the N900 Aircraft in and out of DPA for a period of six months during 2004." Pl.'s Resp. at 4 (emphasis added); *see also id.*, Ex. C, ¶ 6. If in fact Skyway, rather than Royal Sons, chartered the aircraft—one of the two logical possibilities that HW's fourth allegation raises—then this activity would provide no apparent support for HW's argument in favor of personal jurisdiction. Affidavits and documents submitted by the defendants indicate that Skyway, not Royal Sons, Inc., was the lessee of the aircraft. Defs.' Reply at 8. Nonetheless, because the court is making a jurisdictional determination without an evidentiary hearing, it will resolve all conflicts as to the material facts in favor of the plaintiff. *Phencorp*, 440 F.3d at 878.

Assuming, therefore, that the defendants traveled to and from Illinois for the purposes of chartering flights of the N900 out of DPA and monitoring the maintenance of the N120, the court

now addresses the question of whether these contacts are sufficient to establish general jurisdiction over the defendants. A defendant's contacts with a forum "must be so continuous and systematic that the defendant could reasonably foresee being haled into court there on *any* matter." *Int'l Med. Group, Inc.* v. *Am. Arbitration Ass'n*, 312 F.3d 833, 847 (7th Cir. 2002). Considering the facts in this case, as resolved in favor of HW, it is clear that the defendants' contacts with Illinois are in no way continuous or systematic in a manner that would justify the exercise of general jurisdiction over them. HW asserts that the defendants did business in Illinois "through its contact with Scott [Aviation]." Pl.'s Mot. for Leave to Supp. Resp. at 2 (Dkt. No. 33). Scott Aviation, however, is a separate business entity not under the control of either HW or the defendants. The defendants themselves must have substantial contact with the forum state in order for the assertion of general jurisdiction to be proper. *See Nucor Corp.* v. *Aceros y Maquilas de Occidente, S.A. de C.V.*, 28 F.3d 572, 580 (7th Cir. 1994).

Moreover, even if HW were able to support its contention that agents of the defendants traveled to Illinois and stayed in a hotel near DPA to track the maintenance progress of the N120, such contact alone would be insufficient for Illinois to exert general jurisdiction over the defendants. As the Supreme Court reiterated in *Helicopteros*, "purchases and related trips, standing alone, are not a sufficient basis for a State's assertion of jurisdiction." 466 U.S. at 417 (citing *Rosenberg Bros. & Co.* v. *Curtis Brown Co.*, 260 U.S. 516, 43 S. Ct. 170, 67 L. Ed. 372 (1923) (Brandeis, J., for a unanimous tribunal)). Indeed, the defendants' contacts with Illinois in this case appear to be even less substantial than the minimal contacts that the defendant in *Helicopteros*, Helicol, had with Texas. In holding that Helicol's contacts with Texas were insufficient to meet the due process requirements for personal jurisdiction under the federal

9

Constitution, the *Helicopteros* Court noted that, for a period of seven years, Helicol (1) "purchased helicopters (approximately 80% of its fleet), spare parts, and accessories for more than $4 million from Bell Helicopter Company in Fort Worth," (2) "sent prospective pilots to Fort Worth for training and to ferry the aircraft to South America," and (3) "also sent management and maintenance personnel to visit Bell Helicopter in Fort Worth during the same period in order to receive 'plant familiarization' and for technical consultation." *Id.* at 418. The defendants here, in contrast, had far less substantial, less systematic contacts with Illinois over a period of months rather than years.

Based on the defendants' contacts with Illinois as alleged by HW, it would not be reasonable for the defendants to have anticipated being haled into court on an unrelated matter as a result of those contacts. This court thus does not have general jurisdiction over the defendants. If jurisdiction is proper, it must be based, therefore, on specific jurisdiction.

### B. Specific Jurisdiction

A court has specific jurisdiction when a defendant's minimum contacts with the forum state "arise out of" the subject matter of the dispute. *Hyatt*, 302 F.3d at 713. In determining whether such minimum contacts exist, the court may not consider prior unrelated acts, as "only the dealings between the parties in regard to the disputed contract are relevant." *Id.* at 717; *RAR*, 107 F.3d at 1277 (internal quotation marks and citations omitted).

In order to support personal jurisdiction, "there must be some showing that the defendant purposefully availed itself of the privilege of conducting activities within the forum state." *Purdue*, 338 F.3d at 780. HW argues that specific jurisdiction exists because (1) the defendants

made a series of phone calls to members of HW regarding the sale of the N900, the aircraft that is the subject of this dispute; and (2) "the Contract contemplated that defendants would make payment to Plaintiff, which payments were to be made within this District" and that "[o]ne key aspect of performance of the Contract was delivery of the consideration to Plaintiff, including shares of Skyway stock." Pl.'s Resp. at 5.

Concerning the second allegation, the plaintiff relies on *Continental Bank, N.A.* v. *Everett*, for the proposition that "contract performance in Illinois has of itself been held a sufficient basis for jurisdiction." 742 F. Supp. 508, 510 (N.D. Ill. 1990). The contracts at issue in *Continental*, however, were "loan agreement and guaranties that were to be *performed primarily in Illinois*." *Id.* (emphasis added). The contract here, in contrast, was concerned with the sale of the N900 aircraft, the delivery location for which was specified as Florida.

With respect to the first allegation, HW contends that specific jurisdiction exists because the defendants made a series of phone calls to members of HW regarding the sale of the N900, the aircraft that is the subject of the dispute. Plaintiff's Resp. at 4–5. HW cites *Heritage House Restaurants, Inc.* v. *Continental Funding Group, Inc.*, 906 F.2d 276 (7th Cir. 1990), for the proposition that, in HW's words, "a relationship based on telephone contacts may justify jurisdiction" even if "defendants were not physically present in this District." Pl.'s Resp. at 5. The plaintiff's reliance on *Heritage House*, however, is unpersuasive. In that case, the Seventh Circuit noted that "[w]hen a contract which is the basis of plaintiff's claim was entered into in Illinois, the defendant's Illinois activities can suffice to sustain jurisdiction." *Heritage House*, 906 F.2d at 280. In determining whether the defendant "purposefully availed itself of a business transaction with an Illinois corporation located and doing business in Illinois," the Seventh

11

Circuit noted that "[o]ne relevant inquiry is which party initiated the business transaction." *Id.* at 283. In holding that the defendant had sufficient contacts with Illinois to support personal jurisdiction, the *Heritage House* court found not only that the defendant first initiated contact with the plaintiff by sending a solicitation in the mail, but also that the relevant contract was entered into in Illinois and that "defendant offered its services in Illinois to Illinois residents." *Id.* at 280–81, 284.

Here, in contrast, it is uncontroverted that the plaintiff initiated contact with the defendants in an effort to solicit their interest in the transaction. In is also uncontested that the agreement was made when representatives of both parties met in Florida, and that the purchase agreement specifies an airport in Florida as the place of delivery for the N900. The record in this case does not support the conclusion that the defendants purposefully availed themselves of the benefits of Illinois. There is simply no basis for this court to infer that the defendants had the requisite minimum contacts that would allow Illinois to exert personal jurisdiction over them. Because the plaintiff has failed to make out a *prima facie* case of personal jurisdiction, the court need not consider whether the exercise of jurisdiction would comport with "fair play and substantial justice." *See Purdue*, 338 F.3d at 781–82.

**ORDER**

For the foregoing reasons, the defendants' motions to dismiss for lack of personal jurisdiction [#23 and #56] are granted.³ Plaintiff's motion to strike [#31] is denied. The case is dismissed without prejudice.

Dated: September 28, 2007         Enter: *[signature]*
                                  JOAN HUMPHREY LEFKOW
                                  United States District Judge

---

³ Because the court is dismissing the plaintiff's complaint pursuant to Rule 12(b)(2) for lack of personal jurisdiction, the court need not consider the defendants' arguments regarding venue.